**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PAULINO AVILA and ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO,** | ) ) ) ) ) ) | **Case No.: 20-cv-0610** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | |
| **BUILDING IMPROVEMENT, INC., and MARCIN GWIZD,** | ) ) ) | |
| **Defendants.** | ) | |

**COMPLAINT**

Plaintiffs Paulino Avila ("Avila") and Administrative District Council 1 of Illinois of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO ("Union") (together "Plaintiffs"), through their attorneys Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, by way of complaint against Building Improvement, Inc. ("Company"), and Marcin Gwizd ("Gwizd"), (together "Defendants"), state as follows:

**INTRODUCTION, JURISDICTION, AND VENUE**

1.     This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1, *et seq.* ("IWPCA"), and the Employee Classification Act, 820 ILCS § 185/1, *et seq.* ("ECA"), and seeks recovery for Defendants' (1) failure to pay overtime for hours worked in excess of 40 hours in a week, (2) failure to pay agreed wages, and (3) misclassification of employees.

2.     This Court has jurisdiction over Avila's FLSA claims pursuant to 28 U.S.C.

§ 1331, and it has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this judicial district because the facts and events giving rise to the claims presented here occurred in this district, and because the parties to this suit reside within this district.

## PARTIES

4.     Avila is and at all relevant times has been an individual who is an "employee" within the meaning of the FLSA, IMWL, IWPCA, and ECA, and who resides within this judicial district.

5.     The Union is and at all relevant times has been a labor organization that maintains its principal place of business and transacts business within this district, and that is an "Interested party" within the meaning of the ECA.

6.     The Company is and at all relevant times has been an Illinois corporation that is an "employer" within the meaning of the FLSA, the IMWL, the IWPCA, and the ECA.

7.     Gwizd is an individual who resides and transacts business within this district, and is an "employer" within the meaning of the FLSA, the IMWL, the IWPCA, and the ECA.

## COMMON FACTS

8.     Avila is an experienced employee in the masonry trade.

9.     In or around April, 2019, Avila applied for employment with the Company. (All further dates will be 2019 unless otherwise stated.)

10.     Gwizd hired Avila to work for the Company as a bricklayer.

11.     After observing his work, Gwizd told Avila he would pay him $34.00 an hour, and Avila agreed.

12.     Avila has worked as a bricklayer for the Company since on or around April 26,

2

and continues to do so, performing work for and receiving direction and supervision from the Defendants in ways similar to what he encountered in previous employment and what is typical for an employer-employee relationship in the construction industry.

13.     In or around Avila's second week of employment with the Defendants, Gwizd told him that he would frequently be expected to work more than 40 hours in a week and he would be paid at the straight-time rate for this work.

14.     Starting with the paycheck he received on or around May 7 for his first week of work, the Defendants paid Avila through a check payable to him from the Company with no deductions for federal or state taxes or for Social Security or Medicare; and they continued this practice through approximately the end of June.

15.     Consistent with the information Gwizd had provided to him about how the Defendants would treat work over 40 hours in a week, the checks the Defendants provided Avila beginning on or around May 13 did not provide a time and one-half rate, or any other premium rate, for work over 40 hours in a week, and that practice has continued throughout Avila's employment with the Defendants.

16.     In or around Avila's second week of employment, Gwizd told him that in order to be paid, Avila would have to incorporate; and Gwizd told Avila during a second conversation that Avila would have to start his own company because that is the way Gwizd did things.

17.     Avila had no desire to establish his own business and did not understand his relationship with the Company to be anything different than a normal employer-employee relationship in the construction industry, but agreed to abide by this instruction from Gwizd so he would not disrupt their relationship and put his job at risk.

18.     Gwizd told Avila that another employee would tell him what to do to incorporate,

and that individual provided Avila with contact information for an accountant whom he said would help Avila establish his own corporation.

19.     Gwizd subsequently spoke to Avila on more than one occasion about establishing his own corporation, told him the individual who would help him incorporate would contact him about preparing the paperwork and would also help him prepare his taxes and arrange for insurance, and told him what her fee would be for doing this work.

20.     Avila called the individual whom he had been told was going to arrange for him to incorporate a business, she returned his call and said she would begin working on his documents, and then she called him to say the paperwork was completed and he could pick it up.

21.     In or around early July, the accountant provided Avila with papers from the Internal Revenue Service and from the Illinois Secretary of State establishing Paulino Masonry, Inc., as a corporation.

22.     Avila informed Gwizd about having completed the incorporation process and receiving the papers as Gwizd had instructed him to do.

23.     Beginning in or around July and continuing to date, the Company paid Avila for his work through checks payable to Paulino Masonry, Inc.; and as had been the case before that when the checks were made payable to Avila, the checks did not reflect deductions for federal or state taxes, Social Security, or Medicare nor did they reflect time and one-half or any other premium rate for work over 40 hours in a week.

24.     Avila has continued working for the Company, and there have been no changes in his work, his manner of supervision, or his compensation since he established his corporation as directed by Gwizd, except for the change in the name of the payee on the checks he has received.

25.     Gwizd is the Company's president and sole officer, on information and belief is

4

its sole or principal shareholder, at all times has managed the Company's day-to-day operations, has had and exercised the authority to (1) hire and fire the Company's employees, (2) direct and supervise the work of the Company's employees, and (3) make decisions regarding employee compensation and capital expenditures, and at all times has acted in the Company's interest in relation to Avila.

26. Gwizd was Avila's "employer" as that term is defined in the FLSA, 29 U.S.C. 203(d), the IMWL, 820 ILCS 105/3(c), the IWPCA, 820 ILCS 115/2, and the ECA, 820 ILCS 185/1 *et seq*.

## COUNT I
### Violation of the Fair Labor Standards Act

27. Avila incorporates and realleges paragraphs 1 through 4 and 6 through 26 of this complaint as though set forth in their entirety.

28. This count arises from Defendants' violation of the FLSA, 29 U.S.C. §§ 201, 207, by failing to pay overtime wages to Avila at a rate of one and one-half times his regular hourly rate of pay for all time worked in excess of 40 hours during various work weeks.

29. The Defendants directed Avila, during the course of his employment with them, to work in excess of 40 hours in individual work weeks, and Avila did so.

30. Pursuant to 29 U.S.C. § 207, Avila was entitled to be compensated at a rate of one and one-half times his regular hourly rate of pay for all time worked in excess of 40 hours in individual work weeks.

31. Defendants did not compensate Avila at the rate of one and one-half times his regular rate for time worked in excess of 40 hours in various work weeks.

32. Defendants' failure to pay Avila overtime wages at a rate of one and one-half times his hourly rate of pay for all time worked in excess of 40 hours per week violated the

FLSA, 29 U.S.C. § 207.

33. Defendants' violation of the FLSA by failing to pay Avila overtime wages for all time worked in excess of 40 hours in individual work weeks was willful.

WHEREFORE, Avila asks this Court to enter judgment against the Company and Gwizd, jointly and severally, as follows:

A. Ordering them to pay him the difference between the amount equal to one and one-half times his regular rate and the amount they actually paid him for all time he worked in excess of 40 hours in a week;

B. Ordering them to pay him liquidated damages in an amount equal to the amount of unpaid wages for which they are found liable to him;

C. Ordering them to pay the reasonable attorneys' fees and costs of this action; and

D. Granting such other and further relief as this Court deems just and proper.

**COUNT II**
**Violation of the Illinois Minimum Wage Law**

34. Avila incorporates and realleges paragraphs 1 through 4, 6 through 26, 29, and 31 of this complaint as though set forth in their entirety.

35. This count arises from Defendants' violation of the IMWL, 820 ILCS 105/1, *et seq.*, by failing to pay overtime wages to Avila at a rate of one and one-half times his regular hourly rate of pay for all time worked in excess of 40 hours during various individual work weeks.

36. Pursuant to 820 ILCS 105/4a, Avila was entitled to be compensated at a rate of one and one-half times his regular hourly rate of pay for all time worked in excess of 40 hours in individual work weeks.

37. Defendants' failure to pay Avila overtime wages at a rate of one and one-half times his regular hourly rate of pay for all time worked in excess of 40 hours in individual work weeks violated 820 ILCS 105/4a.

WHEREFORE, Avila asks this Court to enter judgment against the Company and Gwizd, jointly and severally, as follows:

A.     Ordering them to pay him three times the difference between the amount equal to one and one-half times his regular rate and the amount they actually paid him for all time he worked in excess of 40 hours in a week;

B.     Ordering them to pay him damages of 5% of the amount of all underpayments for each month following the date of payment during which underpayments have remained unpaid;

C.     Ordering them to pay reasonable attorneys' fees and costs of this action; and

D.     Granting such other and further relief as this Court deems just and proper.

## COUNT III
### Violation of the Illinois Wage Payment and Collection Act

38.     Avila incorporates and realleges paragraphs 1 through 26 of this complaint as though set forth in their entirety

39.     This count arises from Defendants' violation of the IWPCA, 820 ILCS 115/1, *et seq*., by failing to pay Avila the wages they agreed to pay him for his work.

40.     Notwithstanding the agreement made between the Defendants and Avila on Avila's first day of work that they would pay him $34.00 for his work, the Defendants paid him amounts almost every week that were less than $34.00 for each hour of work, even aside from their failure to pay the required premium amount for work over 40 hours in any week.

41.     Gwizd is an officer of the Company and has knowingly permitted the Company to violate the provisions of the IWPCA by underpaying Avila

42.     The Defendants' failure to pay Avila an amount equal to $34.00 times the number of hours worked violated and continues to violate 820 ILCS 115/3 and 820 ILCS 115/4.

43.     The Defendants' failure to pay Avila the agreed wages is and has been willful.

WHEREFORE, Avila asks this Court to enter judgment against the Company and Gwizd,

jointly and severally, as follows:

    A.    Ordering them to pay him the amount of all underpayments;

    B.    Ordering them to pay him damages of 2% of the amount of all underpayments for each month following the date of payment during which the underpayments remain unpaid;

    C.    Ordering them to pay reasonable attorneys' fees and costs of this action; and

    D.    Granting such other and further relief as this Court deems just and proper.

### COUNT IV
### Violation of the Employee Classification Act

44.    Plaintiffs incorporate and reallege paragraphs 1 through 26 of this complaint as though set forth in their entirety.

45.    This count arises from Defendants' violation of the ECA, 820 ILCS 185/1, *et seq.*, by failing to (1) classify Avila properly as an "employee," (2) pay Avila his earned wages as required by the IMWL, (3) pay unemployment insurance on behalf of Avila as required by Illinois law, and (4) provide workers' compensation insurance coverage to Avila as required by Illinois law; and from what Plaintiffs allege on information and belief to be identical misconduct with respect to other employees.

46.    The Company is a corporation that engages in "Construction" and Gwizd is an individual who engages in "Construction" within the meaning of the ECA, and therefore each is a "Contractor" within the meaning of that statute. 820 ILCS 185/5.

47.    Defendants employed Avila and other employees in "Construction" as defined by the ECA, 820 ILCS 185/5.

48.    During the course of his employment, Avila was one of Defendants' "employees" within the meaning of 820 ILCS 185/10.

49.    Even though Avila did not to meet the requirements set forth in 820 ILCS

185/10(b) and (c) for being treated and classified as something other than an "employee," the Defendants classified and treated Avila as a "sole proprietor" by failing to (1) comply with the requirements of the IMWL and IWPCA as described in Counts I and II, (2) pay unemployment benefits on his behalf of as required by Illinois law, (3) provide workers' compensation coverage for him as required by Illinois law, and (4) provide him with other employment benefits due him.

50.     The Union comprises and represents employees in the masonry trade and the ability of those employees to receive fair wages and benefits, and the ability of the Union to represent those employees, are undermined by contractors such as the Defendants who gain a competitive advantage by misclassifying employee and avoiding the financial and work-related obligations that apply when employees are properly classified; and the Union therefore has an interest in compliance with the ECA and is an "Interested party" within the meaning of 820 ILCS 185/5.

51.     In addition to being a "Contractor" and an "Employer" within the meaning of 820 ILCS 185/5, Gwizd is an "officer of [the Company] who knowingly permits [the Company] to violate the provisions of" the ECA within the meaning of 820 ILCS 185/63.

52.     On information and belief, Defendants have committed and continue to commit violations of the ECA with respect to other employees in the same manner as they have with respect to Avila.

53.     The Defendants have violated the ECA by failing to (1) classify Avila and other employees properly as "employees," (2) pay them the required minimum wages, overtime wages, and other earned wages, and (3) pay unemployment compensation on them and cover them by workers' compensation.

54.     The Defendants have acted and continue to act willfully in violating the ECA

WHEREFORE, Avila and the Union ask this Court to enter judgment against the

Company and Gwizd, jointly and severally, as follows:

A.    Ordering them to pay Avila the difference between the amount equal to one and one-half times his regular rate and the amount they actually paid him for all time he worked in excess of 40 hours in a week;

B.    Ordering them to pay Avila liquidated damages in an amount equal to the amount of unpaid wages;

C.    Ordering them to pay compensatory damages to Avila;

D.    Ordering them to pay statutory damages to them equal to $500 for each violation of the ECA, with respect to Avila and all other improperly classified employees;

E.    Ordering them to pay reasonable attorneys' fees and costs of this action;

F.    Ordering them to cease and desist from violating the ECA by improperly classifying employees; and

G.    Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: January 27, 2020               /s/ Barry M. Bennett
                                    One of the Attorneys for Plaintiffs

Barry M. Bennett
Josiah A. Groff
Dowd, Bloch, Bennett, Cervone,
  Auerbach & Yokich
8 South Michigan Avenue, 19th Floor
Chicago, Illinois 60603
(312) 372-1361

10